Let's see, Mr. Britt. Yes, Your Honor. Good afternoon. May it please the court, Jason Britt, for Defendant Appellant Tracy Conley. This appeal turns on whether the government has established beyond a reasonable doubt that Tracy Conley knowingly and intentionally joined a conspiracy. The government has not done so. For that reason, this court should reverse the decision of the district court and remand for entry of a judgment of acquittal. Mr. Conley was convicted after a jury trial of four offenses, conspiracy to possess cocaine, attempt to possess cocaine, each with intent to distribute, and two charges based on unlawful possession of a firearm. To prove these allegations, the government presented testimony that Mr. Conley had met with a group of would-be robbers on the morning of November 1, 2011, and met again with them later that same day when the leader of the group, Mirian Flowers, acting on information provided to him by a confidential informant, decided to carry out a plan to rob a stash house containing 50 kilograms of cocaine. Of course, the stash house, the drugs, the men guarding those drugs were all fictional, and Mirian, Mr. Conley, and five other men were instead arrested. The government unsurprisingly makes much of the burden that a defendant carries when filing a motion for acquittal under Rule 29, and that burden is a steep one, but as this court's decisions in cases like Terrence Jones and Dirk Jones make clear, that burden is satisfied where the government's proof relies on speculation and supposition to establish guilt beyond a reasonable doubt, and that's true here. The government's evidence does not establish that Mr. Conley knowingly and intentionally joined the conspiracy at issue. Only one witness, Anwar Trapp, presented any testimony about what was told to Mr. Conley about the planned robbery, or what Mr. Conley had to say in response to these plans. The testimony was at best vague. According to Trapp, Mirian told Mr. Conley of the planned robbery, relaying information that had been given to him by a third party, this white guy that had hooked him up with the move. Trapp's testimony of this meeting, however, fails to show that Conley actually joined the conspiracy. Trapp's testimony was that it was Adams, not Conley, who asked, how much is we going to get out of this without specifying who the we is? Trapp testified that Conley and Adams wanted to know how Mirian had met the source of this information, and what ultimately was going to happen to him, but that doesn't establish that Conley knowingly and intentionally joined a conspiracy. First of all, the testimony itself is vague. It's unclear what Adams asked, what Conley asked. Even assuming that Conley asked some of these questions about the source, even that doesn't establish that he joined the conspiracy. The government then suggests that when Conley met up with the group later, that that helped seal his membership in the conspiracy, but that's not so. Trapp's testimony, which, again, is the only direct source of information about what was said at this meeting, stated only that when the meeting concluded that the group was going to meet again later in two to three hours. There's no testimony that what was said was that the robbery was actually going to take place in two to three hours, or that further planning for the robbery was going to take place in two to three hours, only that they were going to meet again at that time. Mr. Conley told the police at the time of arrest that he thought they were going to be going on a cleaning job, is that right? There is testimony from a special agent that that's what he said, yes, Your Honor. Were there any cleaning supplies in the van where the arrest was carried out? So there were two vans at the arrest site. The van that... The one that Mr. Conley was in at the time of the arrest. Where the guns were. So there was a van, and I'm giving a lengthier answer than a yes or no because there's a little bit more to it, but when Conley met up with the group again, they met in a co-defendant Jones' van, which was being used as a work van, and there's testimony, there's record evidence that there were ladders, there were drills, there were tools, toolboxes, all this stuff in the back of the van where he initially met with everyone later on in that day. At the time of the arrest, he had been driven in that van to the park reserve, or the forest preserve, and was getting out of that van and into another one when the arrest occurred. So any cleaning supplies in the van he moved into? In the second van, I do not believe so, Your Honor. So that was a rental van that was there, but that was at the time... It's a little hard to see that as the cleaning van, right? So what I would say to that, Your Honor, is that that was the time of the arrest. There was no time at that point for him to get out of the van with the cleaning supplies, with the tools, with everything else, get into the second van and say, hey, wait a second, this doesn't seem right, what's going on, guys? There wasn't really an opportunity for that to happen. As soon as he got from one van to the other van, the bust signal was given, flashbang goes off, agents close in. Where were the guns? The guns were in a toolbox. In which van? It was in the first van, and there's testimony that someone, it's unclear who, was moving the box from the first van to the second van. There's no evidence that Conley ever touched the toolbox, his prints weren't on the toolbox. There's no testimony or any evidence that he moved that box or ever saw what was in it. And that's something that was picked up on by the district court below, that there was no evidence of either actual or constructive possession of those guns, because there was no evidence that he saw what was put into that box or ever handled the box himself. So based on this, the only evidence of Conley's even knowledge of what is going on is from the second argument that Mr. Conley makes, which is the motion for a new trial. Even assuming that this court does not reverse and remand for entry of a judgment of acquittal, it should vacate the denial of the motion for a new trial. The primary reason for that- Do we know why Trapp testified against Conley? They all got deals, I know, that involved cooperation. Yes, Your Honor. Do we know why none of the rest testified? I do not know that, Your Honor. I don't have an answer for that. David Flowers had initially filled out a proffer, or there was a proffer for David Flowers' testimony about what happened at that meeting. However, shortly before trial, he withdrew that proffer. The prosecution put forward Mr. Trapp to testify as to that instead. And of course, on the motion for a new trial, one of the elements that the district court was supposed to consider was the credibility of witnesses who had testified. That's under this court's decision in U.S. v. Washington. Instead of doing that, the district court merely restated that based on its findings as to the motion for judgment of acquittal, sufficient evidence to support the verdict was found, and that was enough for the court to deny the motion for a new trial. The district judge cited the correct standard, right? Yes, Your Honor. Is it your position that she didn't understand the standard? Your Honor, I'm not going to speculate about the lower court's understanding of that standard. All I can say is that based on the ruling, she enunciated the standard correctly, but then proceeded to not apply it. That, you know, under the motion for acquittal, she was frankly forbidden from considering the credibility of any of the witnesses before her, whereas on the other hand, under Washington, for a motion for a new trial, she is required to at least consider that credibility and plainly did not based on the ruling. I see my time is up if there are no further questions. Thank you very much, Mr. Britt. Thank you, Your Honor. Counsel for the government, Ms. Stack. May it please the court? Good afternoon. My name is Megan Stack and I represent the government in this matter. The district court properly denied. I need some help here because what we have here is that the government went after someone who was so clearly a mope and so clearly desperate that he didn't have gas money to get home from work. He was manipulated by co-defendants and the government who lobbied and charged him with statutory minimums that required consecutive sentences so that the clearly upset judge, her hands were tied on sentencing and all in a crime that the government created. Would you agree that he was the minor player as compared to the others? I would not agree with that, Your Honor. The defendant was one of three individuals who had been tasked with the most violent aspect of this conspiracy. They were the ones who were going to go into the stash house armed with guns, take over the drugs from guards they expected in terms of the arms. So I think that it's very difficult to describe him as a minor player. The evidence to the contrary established that the defendant was advised of and agreed to participate in a conspiracy to commit this armed robbery of a drug stash house. The government's evidence with respect to the charged offenses included testimony from our cooperators recounting a planning meeting during which the specific need for guns was addressed, the presence of armed guards was identified, and the various roles of the defendants were assigned. The cooperator testimony was corroborated in significant ways first by the defendant's own post arrest statement, a recording, a number of stipulations, and then phone and cell site records. In addition, the defendant's own conduct in the wake of that planning meeting stood as important corroboration and evidence of his assent and agreement to the conspiracy. Following that planning meeting several hours later, the defendant showed up on Mozart Street in Chicago, met with the other conspirators, got into that work van, and on the way to the final staging location donned latex gloves, which cannot be described as appropriate for doing any type of construction or cleaning work, but rather their purpose was clearly to prevent the robbers from leaving fingerprints behind on the guns. Once the defendant arrived at the final staging location, he exited that crowded work van, entered the second undercover van, which, as Your Honor pointed out, was entirely empty. Not a single tool or construction item or cleaning item was moved from one van to the other. The only thing that moved were the three robbers, all of whom were gloved up and a toolbox full of guns, any walkie-talkie that they could use to communicate during the robbery. Was the toolbox with guns transferred to the second van? It was transferred to the second van, Your Honor. It was recovered from inside that second van. Is there any indication who moved that, or did he have something to do with moving it? The evidence in the record on that point, Your Honor, is a little unclear. It's clear that it was moved by someone, one of those three individuals from one van to the other. However, when the defendant was specifically questioned about that toolbox, because he gave sort of a vague statement about it, I believe his direct words were, he told him to move the toolbox or something like that. He used some sort of unspecific pronouns. And when the agent attempted to drill down more specifically about that toolbox, the defendant unexpectedly became very agitated and angry, which of course suggests that he was well aware of the fact that guns were inside the toolbox, and he understood that making further comments about that particular subject could be problematic for him. Once defendant had moved into this second empty van with everything he needed to commit an armed robbery— Empty except for a toolbox. Correct. A toolbox containing guns. The only thing left to do at that point— I mean, when you say the van was empty, but when was it found empty? Your Honor, excuse me, I mean empty as compared to the crowded van in which he arrived on scene. Yeah, I know, but I'm concerned where the toolbox with the guns in it. It was already moved, and when he went to get in or did get into that so-called empty van, the toolbox was in it. No, that's not correct, Your Honor. Okay, well, where was it? The evidence suggests that the three robbers, one of the three of them, moved that toolbox from the crowded work van to the empty van. When, after the arrest signal was given and the flash bangs went off, the three defendants then jumped out of that second empty van and ran away. Yeah, but you just said somebody moved the toolbox into that empty van. That's correct, Your Honor. So it wasn't empty, the toolbox was in there. Excuse me, I mean empty but for the tools needed to commit the robbery. Okay, but for is a big deal as far as I'm concerned. Yes, Your Honor. And from the government's perspective, the fact that that second van was entirely empty but for the tools needed to commit the robbery, which had been brought into that van by the defendants, that's of course of significance. Turning to the defendant's motion for a new trial, the district court did not abuse its discretion in denying that motion. First, the district court's order makes clear it understood the appropriate standard. As the judge pointed out, the district court cited specifically that motions for a new trial require the court to consider the credibility of the government's witnesses. And the text of the order indicates that in assessing the evidence presented before the jury, including substantial impeachment of Cooperative Trap, that the jury considered all of that evidence, notwithstanding that impeachment, they found Defendant Trap credible. And the evidence suggests... Why wasn't Trap testified against Connolly? Because they all got terrific deals. His sentence is so much higher. The defendant's sentence is higher, that's correct. He chose not to cooperate with the government. As the record indicates, he was offered the same plea deals that his co-defendants were offered, and he chose not to pursue a plea agreement, and instead exercised his right to trial. And as a result, mandatory minimums were assessed. I have a question as to why no one else but Trap testified. Do you know the answer? Your Honor, another defendant did testify, Dwayne Jones, also testified pursuant to a But not against Connolly, right? He did testify against Connolly, Your Honor. It's just that his testimony was not as specific as Trap about Connolly's role. That's correct. Because Defendant Jones was not present at that earlier basement meeting, although he was told about it later by other defendants. Right. You just jogged my memory. Counsel, could I ask you, on this new trial question, we have the citation to the correct standard. Then we have the indication that evidence was sufficient to convict. There is a disconnect there. What do you see as the clearest signal from the district judge that she was applying the correct standard and actually exercised discretion? Yes, Your Honor. If we parse the actual language that the district court used, she first set out the standard implicating the consideration of credibility of the witnesses. The court went on to then say, having already determined that there was sufficient evidence to support this conviction, the court turns to the defendant's other arguments regarding judicial error. And the government interprets that language as follows. It was a signal by the district court that, look, in the earlier part of my decision, I've already fully assessed the evidence with respect to the sufficiency arguments. And as part of that discussion, she identified this issue about trap, the significant impeachment about trap, and determined that the jury found him to be credible. I think in the wake of that, what you can infer from the order is that the district judge saw no reason to upset the jury's conclusion in that regard. It was a properly instructed jury considering properly admitted evidence. They had a full complement of both impeachment and corroborating information. And after sifting through all of that, they determined that trap was credible. So there was no basis for the district court to upset that finding. That's our interpretation of the order, Your Honor. With respect to defendant's second position, he should not have been permitted to assert an entrapment defense in this case. He could not have argued that he was directly entrapped, of course, because he had no direct contact with any government agent at any point during the case. So the only available defense would have been one of derivative entrapment. But in this case, the defendant was not recruited by the first level or even the second level defendant. He was recruited by the third level defendant, Anthony Adams. And based on this court's prior ruling in the Ward case, the factual circumstances of this case make the derivative entrapment defense unavailable to him as a matter of law. And for the foregoing reasons, the government respectfully requests that the court affirm defendant's conviction. Okay. Thank you, counsel. Mr. Britt, your time expired, but if you'd like a moment for rebuttal, go ahead. Your Honor, a couple of points picking up at the end of Ms. Stack's argument. First of all, with regard to Ward and derivative entrapment, this case is factually distinguishable from Ward. In Ward, the primary entrapee had said that he did not lay out the entire plan to the defendant there, that he barely knew that person. Here, while it is Adams that contacted Conley in the first instance about this and brought him to the basement meeting, it was Miriam Flowers. It was the primary contact with the government agents who, according to the testimony we have, told Conley what it is that Conley knew about this robbery plan. So, I would say that this is a case that's distinguishable from Ward in that regard, and you don't have the issues with derivative entrapment that you had there. Outside of Hollingsworth, have we actually recognized a derivative entrapment defense? Not that I'm aware of, Your Honor. It seems difficult, but a rare beast. Okay. Thank you very much. Mr. Britt, you and your firm serve by court appointment in this case, is that right? Yes, Your Honor. You have the thanks of the court for your service to the court as well as to your client, and we also thank the government for its presentation, and the case will be taken under advisement. Thank you, Your Honor. Court will be in recess.